OPINION
{¶ 1} Susan Clowtis ("grandmother") appeals from the judgments of the Lake County Court of Common Pleas, Probate Division, terminating her guardianship of her grandchildren, Andrew Mikal Clowtis and Cassidy Leigh Breach ("minor children"), in this consolidated matter.
 {¶ 2} The record discloses the following undisputed facts. Appellee, Douglas M. Breach ("father"), and Leigh Ann Clowtis ("mother"), were unmarried and the natural parents of the two minor children. On March 12, 2003, the mother died. On March 19, 2003, grandmother filed an application to be appointed the guardian of the persons and estates of the children with the Lake County Probate Court. That court consolidated the guardianship hearings for April 22, 2003. On the day of the hearing, grandmother and father entered into an agreed judgment entry, which was approved by the court and filed on April 28, 2003. In that judgment entry, the father agreed to: "the grandmother * * * having non-limited guardianship of the persons and estates of his children, on a temporary basis[.]" The judgment entry further specified that the court would retain jurisdiction over the children, set a visitation schedule for father, and ordered that a review hearing of the guardianship be conducted in six months.
 {¶ 3} Accordingly, a review hearing was held on November 3, 2003. At that hearing, grandmother informed the court that she was moving to Huron County, Ohio, in mid-November. Another agreed judgment entry was filed on November 19, 2003, continuing the guardianship for six additional months. The court ordered that grandmother "[s]hall continue to have non-limited guardianship of the persons and estates of the [children] * * * on a temporary basis[.]" The trial court further ordered grandmother to apply to the Huron County probate court for a transfer of venue.[1]
 {¶ 4} The court again ordered a review hearing to be held in six months "to consider whether the temporary guardianship should be extended[.]"
 {¶ 5} On February 5, 2004, father filed a motion to terminate the guardianship of his minor children. Grandmother filed a brief in opposition. The matter was set for trial on June 23, 2004. On the day of trial, the parties entered into an agreed judgment entry to continue the temporary guardianship for one year; to increase the father's parenting time; providing that father would complete a parenting class and an alcohol education course; and that father would obtain a suitable residence with at least three bedrooms. In the judgment entry, the court further ordered: "a review hearing shall be set within one year[.] At the review hearing, the parties may jointly petition the court to terminate the guardianship[.] * * * In the event that the parties cannot mutually agree * * * either party may request that this court set the matter for trial."
 {¶ 6} On July 13, 2005, a review and status hearing was held before a magistrate. In [his/her] order, the magistrate determined that "the matter be continued for 60 days and further hearing be set, allowing [father] to finish the alcohol education and parenting class, for a home investigation, and for a follow up by Dr. McPherson." The magistrate further recommended that the court appoint a guardian ad litem to visit father's home and conduct a home study.
 {¶ 7} On August 5, 2005, the court adopted the magistrate's decision. The court ordered that "this matter shall be continued for further hearings on the status * * * * and for possible termination of the guardianship[.]"
 {¶ 8} On September 16, 2005, father again filed a motion to terminate grandmother's guardianship of his children. Father submitted a brief, affidavit, and the report of Dr. Sandra McPherson, Ph.D. A hearing was held on September 29, 2005, before a magistrate. In the October 24, 2005 decision, the magistrate applied the "good cause" standard and recommended that the guardianship be terminated, based upon evidence that father and his wife were "suitable parents."
 {¶ 9} On November 8, 2005, grandmother filed objections to the magistrate's decision, but failed to file a transcript. On February 15, 2006, the trial court conducted an oral non-evidentiary hearing on grandmother's objections. On March 21, 2006, the court entered judgment overruling grandmother's objections, adopted the magistrate's decision, and terminated grandmother's guardianship of the minor children. It is from that judgment that grandmother filed a timely notice of appeal and asserts the following three assignments of error:
 {¶ 10} "[1.] The trial court erred and abused its discretion in adopting the magistrate's decision terminating the guardianship where the termination was not in the best interests of the children.
 {¶ 11} "[2.] The trial court erred in overruling the objection to the admission of Dr. McPherson's report.
 {¶ 12} "[3.] The trial court erred in terminating the guardianship of the estate of the children."
 {¶ 13} Grandmother failed to provide the trial court with a transcript of the trial when she filed her objections to the magistrate's decision. This oversight is important because under former Civ. R. 53(E)(3)(b), a party was required to support any objection to a magistrate's decision with "a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available." If the complaining party fails to support his or her factual objections in accordance with Civ. R. 53, then he is precluded from arguing factual determinations on appeal. Yancey v. Haehn, 11th Dist. No. 99-G-2210, 2000 Ohio App. LEXIS 788, at 7, citing Dintino v.Dintino, 11th Dist. No. 97-T-0047, 1997 Ohio App. LEXIS 6027. When no transcript or affidavit is provided to the trial court in support of objections to a magistrate's decision, this court is limited to determining whether or not the trial court abused its discretion in adopting the magistrate's decision. Allen v. Allen, 11th Dist. No. 98-T-0204, 2000 Ohio App. LEXIS 1464, at 8, citing Gorombol v.Gorombol, 11th Dist. No. 95-L-036, 1996 Ohio App. LEXIS 3366. In the absence of a transcript from the magistrate's hearing, the scope of a trial court's review of the factual findings in a magistrate's decision "is limited to determining whether those findings are sufficient to support * * * the conclusions of law" reached by the magistrate. In reEstate of Thut, 11th Dist. No. 2004-L-138, 2005 Ohio 4647, at ¶ 28
(citation omitted). In other words, as an appellate court, we will only reverse if we find the trial court adopted the magistrate's decision when there was clear error of law or other defect on its face. Former Civ. R. 53(E)(4)(a); Williams v. Williams, 11th Dist. No. 99-A-0008,2000 Ohio App. LEXIS 4554, at 14. If an appellant cannot demonstrate the claimed error, then a reviewing court will presume the regularity of the trial court proceedings and affirm the judgment. Lambert v.Lambert, 11th Dist. No. 2004-P-0057, 2005-Ohio-2259, at ¶ 29; In ReDawson, 11th Dist. No. 2004-T-0027, 2005-Ohio-2088, at ¶ 45. With the foregoing principles in mind, we shall proceed to address grandmother's assignments of error.
 {¶ 14} In her first assignment of error, grandmother argues that the trial court erred in applying the good cause standard to terminate the guardianship. Grandmother contends that the court was required to apply the R.C. 3109.04 "best interest of the child" analysis in the guardianship termination proceedings.
 {¶ 15} R.C. 2111.46 governs the termination of a guardianship for a minor and provides, in part: "[w]hen a guardian has been appointed for a minor before such minor is over fourteen years of age, such guardian's power shall continue until the ward arrives at the age of majority, unless removed for good cause or unless such ward selects another suitable guardian. * * *" (Emphasis added.)
 {¶ 16} In Masitto v. Masitto (1986), 22 Ohio St.3d 63, 65, the Supreme Court of Ohio recognized that the general rule concerning original custody awards is that parents who are deemed suitable have a "paramount" right to the custody of their minor children as against a non-parent. However, this right to custody is not absolute as it may be forfeited by the parents through contract, abandonment or by becoming totally unable to care for and support their children. Id. at 65. Whether the parent, in this case father, has relinquished his right to custody of the minor child is a question of fact to be determined by the trier of fact. In re Guardianship of Sanders (1997),118 Ohio App.3d 606, 615.
 {¶ 17} The determination of whether father forfeited his custody rights is vital, as it dictates which standard is to be applied in this termination proceeding: the "best interest of the child" standard under R.C. 3109.04; or, the "good cause" standard set forth in R.C. 2111.46. If the probate court determines that a parent has permanently relinquished custody, then the best interest standard must be used in adjudicating a motion to terminate the guardianship. Sanders at 613;In re Guardianship of Joles, 11th Dist. No. 99-L-087,2000 Ohio App. LEXIS 2987, at 4-5. If, however, the probate court finds that a parent has not forfeited his permanent custodial rights, then that court is under no duty to apply the best interest standard. Instead, it can terminate a guardianship based solely on the "good cause" standard mandated by R.C. 2111.46. Joles at 5-6; In re Spriggs, 4th Dist. No. 89-CA-1803, 1990 Ohio App. LEXIS 1638, at 7.
 {¶ 18} Furthermore, an agreement to surrender temporary custody is not a forfeiture of a parent's future custody rights. Sanders at 615;Spriggs at 3. Thus, where a parent consents to a temporary guardianship but later seeks to regain custody of the child, the probate court is to employ the good cause standard. Spriggs at 2-3.
 {¶ 19} In her brief, grandmother concedes that the guardianship in this matter was temporary. However, despite the legal principles discussed above, grandmother insists that the best interest of the child standard must be extended to the temporary guardianship in this case.
 {¶ 20} In support of her argument, grandmother relies on a decision of the Ohio Supreme Court, In re Hockstok, 98 Ohio St.3d 238,2002-Ohio-7208. In Hockstok, the court held that in a child custody case arising from a parentage action, "a trial court must make a parental unsuitability determination on the record before awarding legal custody to the nonparent." Id. at syllabus.
 {¶ 21} "* * * [A]fter the legal custody determination is made, the best-interest-of-the-child standard should be used for any custody modification petitions filed by a natural parent. A parent should be given only one unsuitability determination, which should come at the time of the legal custody hearing. After such a determination has established, or taken away, a parent's fundamental custodial rights, the focus must shift from the rights of the parents to the rights of the child. A child's rights are effectuated through the use of the best-interest-of-the-child standard for subsequent custodial modification requests." Hockstok at 247.
 {¶ 22} Grandmother takes the position that due to her appointment as temporary guardian, the court impliedly determined that father was unsuitable, and that custody of the minor children was hers. Consequently, the "best interest of the child" test should have been employed by the trial court at the termination hearing. Grandmother's reliance on Hockstok is misplaced.
 {¶ 23} Hockstok involved a natural mother who signed two separate agreements giving her parents custody of her son for six month periods, while she attempted to create a more stable living environment for the child. In each instance, the mother failed to comply with the terms of the temporary custody agreements. In the end, the maternal grandparents filed a motion for custody of their grandson, and were eventually awarded custody without the magistrate or trial court ever making a parental unsuitability determination. That judgment was not appealed.
 {¶ 24} Ten months later, the mother filed a motion to modify custody. The trial court reviewed her motion under an R.C. 3109.04(E) "best interest of the child" standard, and ultimately denied her request. She appealed to the Fifth District Court of Appeals, which reversed the judgment and remanded it to the trial court for a parental suitability determination. The Supreme Court affirmed the court of appeals holding that the trial court should have considered the mother's suitability as a parent in granting the grandparents' motion for custody at a contested custody hearing.
 {¶ 25} Thus, contrary to grandmother's assertion, theHockstok court did not find an unsuitability determination occurred merely as a part of an agreement for temporary guardianship.
 {¶ 26} Notably, the Hockstok court distinguished between temporary and legal custody. "[T]here is no evidence that [the parent] ever agreed to give [grandparents] legal custody of her child. The [parent] merely entered into an agreement whereby the [grandparents] were given temporary custody of the child[.]" The court concluded that the trial court erred in not making a suitability determination before awarding legal (rather than temporary) custody to a non-parent over a parent's objections. Id. at 247.
 {¶ 27} Grandmother also relies upon the decision of the Supreme Court in Masitto. In Masitto, the natural father signed consent for the maternal grandparents to be joint guardians of his daughter, with no reservations or qualifications. Then, the father initiated a divorce action against the mother. The trial court adopted the language of guardianship in its award of custody. The Supreme Court held that "by consenting to the guardianship and divorce decree, the father forfeited his natural rights to custody of his daughter, making the child's best interest the appropriate test for a change in custody." Id. at 66.
 {¶ 28} Masitto is distinguishable. Unlike in Masitto, the trial court herein found, "the guardianship was created as a temporary measure to ensure father's fitness and sustained commitment to parenting." InMasitto, there was an unequivocal consent to the guardianship and subsequent divorce case.
 {¶ 29} This court has recognized that a parent's agreement to surrender temporary custody, through guardianship, is not a relinquishment of a parent's right to preferential treatment in a subsequent determination of custody. See In re Joles, supra; In reHoffman, 11th Dist. No. 99-L-199, 2000 Ohio App. LEXIS 6105; Sanford v.Sandford, 11th Dist. No. 96-T-5514, 1997 Ohio App. LEXIS 2580.
 {¶ 30} By way of further explanation, it is well recognized that the parent, being the natural custodian of the child, starts with the benefit of the preferential considerations mandated as a natural right by In re Perales, (1977), 52 Ohio St.2d 89, 96-97. The rationale in continuing the parental preference in cases of temporary guardianship is that courts should encourage parents to seek help if and when necessary. See In re Hendrickson, 152 Ohio App.3d 116, 2003-Ohio-1220, at ¶ 21. InIn re Stein (2004), 105 Ohio St.3d 30, the Supreme Court of Ohio stated that: "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child[.]" Id. at 36, citing, Santosky v. Kramer (1982),455 U.S. 745.
 {¶ 31} Here, in its judgment entry on the magistrate's decision, the probate court stated in part: "* * * the problems that engendered the guardianship, whether the * * * father was suitable to parent the minor child was resolved. Further it is clear from the agreed entries that the guardianship was meant to be temporary." A review of the record before this court supports this conclusion. In the absence of a transcript, grandmother is bound by the finding that that guardianship was temporary.
 {¶ 32} Thus, the trial court did not err in applying the good cause standard in terminating the guardianship. This portion of grandmother's assignment of error is without merit.
 {¶ 33} Next, grandmother contends that, assuming the good cause standard applied to the temporary guardianship, through the agreed upon extension of its duration, the guardianship became permanent. The original letter of guardianship was issued on April 28, 2003, and stated a definite term of six months. On November 19, 2003, the court entered an agreed judgment entry to "continue the temporary guardianship with a review hearing to be set in six months[.]" On June 24, 2004, the court entered an agreed judgment entry ordering that a review hearing be held by the court within one year. That judgment entry further set forth obligations father was required to meet. On September 16, 2005, father filed a motion to terminate guardian of grandmother for his children. Through agreed upon entries, the guardianship in this matter lasted approximately two and one-half years.
 {¶ 34} The Second District has held that a "long `nterval between a consensual award of "temporary" custody and the parent's attempt to terminate that award might be deemed to surrender, as a result of the passage of time, the parent's right to preferential treatment.'" In reGuardianship of Godsey, 2d Dist. No. 2002-CA-69, 2003-Ohio-2692, at ¶ 13, citing, In re Custody of Carpenter (1987), 41 Ohio App.3d 182,185. Here, the probate court determined that the guardianship was temporary. Whether the interval is long enough for a court to find a surrender of parental rights is a question of fact. In the Matter of Wilson, 2d Dist. No. 98-CA-19, 1999 Ohio App. LEXIS 1897, at 33, citing, Miller v.Miller (1993), 86 Ohio App.3d 623, 626. Thus, without a transcript, grandmother is unable to demonstrate any error. In view of this, the trial court's decision, that the guardianship was temporary, must be found correct.
 {¶ 35} The first assignment of error is without merit.
 {¶ 36} In her second assignment of error, grandmother asserts that the magistrate erred by admitting Dr. McPherson's report into evidence. A review of the record discloses that the parties were referred to Dr. McPherson for evaluation. Dr. McPherson conducted psychological evaluations of the minor children and grandparents, and conducted a home visit with father. In her report filed, Dr. McPherson recommended that "the children should live with their father and stepmother in the home in Fairport Harbor[.]" Father attached a copy of the report to his motion for termination, and the magistrate considered the report at the hearing. However, it is undisputed that Dr. McPherson did not testify at the hearing. In her objections to the magistrate's decision, grandmother argued that the report was hearsay and should have been excluded pursuant to Evid. R. 801.
 {¶ 37} In its judgment entry, the court found that "[w]hile admitting this report may have been error, the error was harmless." The court noted that in its decision, the magistrate specifically found there was "sufficient evidence to terminate the guardianship without Dr. McPherson's report." The court specifically noted that father had not missed parenting time, had a steady job, was able to support his family, completed both an alcohol training class and parenting class, and father's home was found appropriate.
 {¶ 38} Our review of the trial court's reference to Dr. McPherson's report reveals that it was minimal in nature. To the extent the magistrate considered the report, the trial court determined any error was harmless, because the ultimate conclusion that the guardianship should be terminated was supported by other admissible evidence. SeeIn re Davis, 11th Dist. No. 2004-A-0068, 2005-Ohio-411, at ¶ 17-18. Without a transcript, grandmother is unable to demonstrate the claimed error, and we must presume the regularity of the proceedings. Grandmother's second assignment of error is without merit.
 {¶ 39} In her third assignment of error, grandmother argues that the court improperly terminated the guardianship of the estate of the minor children. From the agreed judgment entries, the guardianship of the two minor children was "over each ward's person and estate." By its judgment entry, the court adopted the magistrate's decision and terminated "the guardianship." Grandmother essentially asserts that the court was required to make separate findings as to the guardianship of the estate before termination of the guardianship in its entirety.
 {¶ 40} There is no evidence in the record that grandmother objected to the findings in the magistrate's decision recommending termination of "the guardianship" as it related to the guardianship of the estate of the minor children. Former Civ. R. 53(E)(3)(d) provided, in pertinent part: "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Grandmother did not object to the magistrate's decision to terminate the guardianship in its totality. Herein, we may only review the trial court's decision for "plain error." Diffenbacher v. Diffenbacher, 11th Dist. No. 2005-L-074, 2006-Ohio-2238, at ¶ 24, citing, Brown v. ZurichUS, 150 Ohio App.3d 105, 2002-Ohio-6099, at ¶ 27. None is present in the magistrate's decision, which contains findings of fact for termination of the guardianship. The third assignment of error is without merit.
 {¶ 41} The judgments of the Lake County Court of Common Pleas, Probate Division, are affirmed.
DONALD R. FORD, P.J., WILLIAM M. O'NEILL, J., oncur.
[1] Ultimately, the Lake County Probate Court denied grandmother's request for change of venue to Huron County. The denial of that request is not a part of this appeal.