[Cite as *In re C.M.*, 2013-Ohio-5427.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 99601 and 99602**

# IN RE:   C.M. and L.M.
# Minor Children

## [Appeals by D.H., et al.]

**JUDGMENT:**
AFFIRMED

Civil Appeals from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. CU 10105399 and CU 10105400

**BEFORE:**   Boyle, P.J., Keough, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**   December 12, 2013

**ATTORNEY FOR APPELLANTS**

Michael A. Partlow
112 South Water Street, Suite C
Kent, Ohio   44240


**ATTORNEY FOR APPELLEE**

Mary V.G. Walsh
4403 St. Clair Avenue
Cleveland, Ohio   44103

Candace L. Brown
Guardian Ad Litem
P.O. Box 286
Medina, Ohio   44258

MARY J. BOYLE, P.J.:

{¶1} Plaintiffs-appellants, D.H. ("father") and J.H. and F.H. ("paternal grandparents"), appeal from a judgment naming mother the residential parent and legal custodian of the children and awarding father parenting time and the paternal grandparents visitation. They raise four assignments of error for our review:

> 1. The trial court erred and abused its discretion by establishing the mother as the residential parent of the parties' minor children.
>
> 2. The trial court erred and abused its discretion by failing to provide father with adequate parenting time with his children.
>
> 3. The trial court erred and abused its discretion in ordering father not to take pictures or not to videotape or record the children and not to take away their cell phones.
>
> 4. The trial court erred and abused its discretion in assigning one third of the guardian ad litem fees to [J.H. and F.H.].

{¶2} Finding no merit to appellants' appeal, we affirm.

## Procedural History

{¶3} L.M. ("mother") and father met in 1997 or 1998, when they became online pen pals. A year or two later, mother moved from Cleveland to Columbus to live with father. They had two children together, C.M., born in July 2001, and L.M., born in April 2004. Except for brief periods of breaking up, father and mother lived together until October 2009, when mother moved back to Cleveland with the children without telling father. At the time, father was in jail due to allegations of domestic violence that mother had made against him.

**{¶4}** In November 2009, father filed a complaint for allocation of parental rights and responsibilities in the Franklin County Juvenile Court. Mother answered and filed a counterclaim for allocation of parental rights and responsibilities. In January 2010, Franklin County transferred this action to Cuyahoga County Juvenile Court, which the Cuyahoga County court accepted in April 2010. In April, the paternal grandparents moved to have visitation with the children.

**{¶5}** In June 2010, Candace Brown was appointed as guardian ad litem ("GAL") for the children. The GAL immediately moved for psychological evaluations to be done on the children.

**{¶6}** By agreement of the parties in July 2010, father was granted supervised parenting time with the children for two hours each week at Safe and Sound visitation center. The paternal grandparents were granted visitation with the children one weekend per month, to take place in Cleveland on Saturdays and Sundays from 9:00 a.m. to 7:00 p.m., but not overnight. Father and grandparents were also permitted to call the children on Tuesdays and Thursdays from 6:00 to 8:00 p.m.

**{¶7}** Eventually, the trial court increased the father's parenting time and the grandparents' visitation time. In January 2011, the trial court ordered that father shall have parenting time one weekend per month in Columbus to be supervised by the paternal grandparents. The trial court further ordered that father shall continue to have monthly visits at Safe and Sound. In September 2011, the trial court ordered that father have unsupervised visitation with the children "on his Saturday visits in Columbus between

1:00 and 4:00 p.m. so long as he and the children exercise the unsupervised visit in a public place."

{¶8}   The trial began on June 25, 2012, and continued on October 1 and 2, 2012. Prior to trial, the GAL submitted her report and recommendations.

GAL Report and Recommendations

{¶9}   The GAL reviewed father's criminal history, which included an aggravated burglary conviction in 1991, a burglary conviction in 1994, "reckless operation of motor vehicle, drug abuse" in 1994, two convictions for disorderly conduct in 2000, and disorderly conduct in 2004.

{¶10} The GAL reviewed allegations made by each parent.   Regarding the alleged incident that led to mother leaving Columbus, which occurred on October 25, 2009, mother stated that she was making eggs in the kitchen while the children were present. Mother and father got into a verbal argument.   Father backed her into a corner and grabbed the skillet.   Mother thought that father would throw the hot skillet at her face, so she put her hand on his.   Father then put his forearm into her neck causing pain and redness.   Mother got away from father, ran outside with the children, and called the police.

{¶11} According to father, there was no physical confrontation.   Father stated that he and mother were arguing because he "told the bitch she needed to clean the house." When she refused, he began to clean up and mother grabbed the pan from his hands. Father stated they briefly struggled for control of the pan.

{¶12} Father was not cooperative with police when they arrived at the scene. He was arrested for domestic violence. Mother filed for a civil protection order and received a temporary protection order. Father filed a cross-petition for a civil protection order. Both orders were denied by the trial court. The temporary protection order was lifted in April 2010, and the criminal case was dismissed that same month.

{¶13} After the incident, children services became involved, both Franklin County and then Cuyahoga County. In December 2009, Franklin County Children Services "substantiated" physical abuse by father against mother. Father appealed the decision. The disposition was changed to "indicated." Father appealed a second time, after which the disposition was changed to "unsubstantiated." At the hearing on father's second appeal to children services, mother and the children did not participate. The hearing officer's report found that "the length of time that transpired between the date of the October 25, 2009 incident and the time the children were interviewed was problematic." The hearing officer "believed it was possible that the girls were subjected to pressure to revise their historical perspective of the event to accommodate the custodial parent's viewpoint." The hearing officer noted that "too much weight could have been given to father's past criminal activity and not enough on the effect of the altercation on the children." The hearing officer further noted that "the DVD submitted by father is a pathetic attempt to make counter-allegations against mother. * * * The making of this recording suggests a disdain for the mother that exceeds common sense and compassion

for the children."[1]   The hearing officer concluded that no harm to the children "was attributed to his event."

{¶14} The GAL noted in her report, however, that the children services hearing officer's conclusion was "incorrect," because the children were evaluated by Children Who Witness Violence in Cuyahoga County and each was diagnosed with a "mental disorder based on exposure to domestic violence between the parents."   C.M. was diagnosed with anxiety disorder, and L.M. was diagnosed with post-traumatic stress disorder.   The children were still in individual counseling as a result.

{¶15} The GAL reviewed father's supervised visitation with the children at Safe and Sound visitation center, which lasted until March 20, 2011.   The visits generally went well until then.   The GAL reported that Safe and Sound stated that they had notified father that the time for his visits had been changed.   On March 20, father did not arrive at his visit on time.   The monitor called father to tell him that his visit had started at 2:00 p.m., and father "got very irate and abusive on the phone, saying fuck constantly." Father argued that no one had told him that his visits had changed.   Mother arrived at the center and told the monitor that she had just seen father driving by the center.   The monitor called father and told him the children were there.   Father said that he could not get there until 2:45 p.m.   The monitor told him that he needed to be there by 2:15 p.m. or his visit would be cancelled.

_____

[1]The GAL later explains that father videotaped the children where he interrogates them in an attempt to get them to say that their mother physically abused them.

**{¶16}** The GAL then reported:

> At 2:12 p.m., father arrived at the center. [The monitor] gave father a copy of his contract, highlighting that verbal abuse and violence were prohibited. Father crinkled up the contract and threw it on the table, stating he could talk how he wanted. Father then stated he wanted another monitor. [The monitor] stated she was the only monitor. He refused to allow her to monitor, so [the monitor] told him the visit was cancelled. [The monitor] told father to wait a moment and began walking towards the elevator. Father ran down the hall toward [the monitor]. A guard ran after him. As he approached [the monitor], he asked, "Are you scared?" He then ran down the stairwell. Security had to escort father off the property while he continued to curse. Mother and children were found hiding in the dark gym in the basement huddled together. Safe and Sound subsequently terminated father's contract and visitation.

**{¶17}** The GAL further reported that "throughout father's parenting time with the children, the children have reported father taking pictures and videotaping them." The children said that this makes them uncomfortable. Father told the GAL that he was "not trying to build evidence for his court case," but merely trying to memorialize his time spent with his children. The GAL reviewed several videos, most of which were fine. But in one video, father interrogates the girls about "mommy hitting them." In the video, L.M. states that "mommy hit her." Father has her take her shirt off to look for a bruise. In another video, father asks the children (referring to Columbus), "wouldn't it be better if you lived here?" The children did not respond.

**{¶18}** Regarding the paternal grandparents, the GAL reported that the children have a good relationship with them and the visits go well. The grandparents began supervising father's visitation in January 2011. The GAL noted that "the children spend

the night at the paternal grandparents' home and spend the majority of the time with the grandparents."

{¶19} The GAL noted that in December 2011, the children reported that father smoked marijuana at a Christmas Eve party at the grandparents. The children stated that they knew what it smelled like because father had smoked it "all their lives." Father took a urine drug test in March 2012 and tested negative. Both parents were also ordered to take a hair follicle test on January 18, 2011. Mother gave her negative results to the GAL on February 5, 2011. Father did not do the test until April 12, 2012, and it was negative.

{¶20} The GAL reported that the parties were referred to the court's diagnostic clinic in 2010. Randall S. Baenen, Ph.D., conducted an evaluation and completed a report on December 23, 2010. Dr. Baenen conducted a MMPI-2 test on both parents. Dr. Baenen reported that father's test results indicate "he tends to be somewhat impulsive and self-centered. He tends to act out when emotionally stressed. When confronted with the consequences of his actions he tends to minimize and project blame." Mother produced a valid MMPI protocol with "no elevations on any clinical scales."

{¶21} As of June 2012, the children were still consistently telling the GAL that "they do not want to see their father. If they have to see him, they do not want to be alone with him. They are happy to visit with their grandparents."

{¶22} The GAL recommended that mother be designated residential parent. Father should receive visitation the first and third weekends of the month, to be

supervised by the grandparents, except that father receive five hours of unsupervised time with the children at some point during the weekend. The GAL further recommended that father participate in individual counseling with a focus on anger management counseling, and that "[a]ny further unsupervised visitation should be based upon father's progress in individual counseling." The GAL recommended that father receive visitation for holidays according to the court's standard schedule, except that the paternal grandparents should supervise these visits, except for five hours of unsupervised time with the children. The GAL also recommended that the grandparents receive two weeks of summer vacation with the children. The GAL reserved the right to change her recommendation at the close of trial.

### Trial

{¶23} Father, the paternal grandparents, Dr. Deborah Koricke (family counselor), and Jeremy H. (father's cousin) testified as part of father's and paternal grandparents' case in chief, as well as mother on cross-examination. Mother also testified on direct examination as part of her case. The GAL testified for the court.

{¶24} Dr. Deborah Koricke testified that she got involved in the case as a family counselor in April 2011, after Safe and Sound cancelled father's supervised visits. She met with father and mother alone, as well as with the children.

{¶25} Dr. Koricke testified the children were afraid of father at first, stating that he had been violent. But over time, she stated that the children had become less critical of their father overall, complaining about more minor things after their visits with him. Dr.

Koricke further stated that mother had "softened" her views on father as well, compared to when Dr. Koricke first got involved in the case.

{¶26} Dr. Koricke explained that up until the June 25, 2012 trial date, father had been having supervised visitation one weekend per month supervised by the paternal grandparents. Dr. Koricke testified on June 25 that father "should probably have more time" than he had as of that date. She also testified that she did not know if father "really needs supervision."

{¶27} Dr. Koricke further testified that she did not do a "custody evaluation," but she felt that the children were doing "pretty well" with mother.

{¶28} Father testified, mostly explaining, refuting, or denying many of the negative aspects and events that the GAL had put in her June 2012 report.

{¶29} Mother testified that she was fine with the paternal grandparents having visitation with the children, but she still did not want father to have unsupervised visits with the children.

{¶30} The GAL testified at the close of trial that since she filed her report and recommendation in June 2012, she would only change a couple of things. The GAL testified that since she submitted her report, father had three weekends of unsupervised parenting time with the children (where "some incidents" occurred, including an incident at a store where the father got angry with the sales person in front of the children). The GAL testified that she was changing her recommendation regarding father's parenting time to every other weekend, unsupervised, but she made it contingent upon father "being

engaged in anger management counseling." The GAL testified that "it would be imperative that the girls have their cell phone on them at all times" and be able to call their mother any time they wanted to.

{¶31} After the trial was completed, the trial court conducted in camera interviews with the children.

## Trial Court's Judgment

{¶32} The trial court ordered that mother be named the residential parent and legal custodian of the children. The trial court further ordered that the grandparents shall have visitation with the children one weekend per month and that father shall have parenting time with the children one weekend per month. The trial court explained that the grandparents' and father's weekends would alternate with mother's. The trial court also awarded the grandparents two weeks of visitation in the summer.

{¶33} The trial court further ordered (1) that father shall not attempt to videotape or record the children, (2) shall not take away the children's cell phones, and (3) shall not discuss parenting issues with the children. The trial court also ordered father to participate in counseling, to complete an anger management program, and to submit evidence of such to the court within 180 days of the date of judgment, which would have been by July 2013.

{¶34} Finally, the trial court ordered the mother, father, and the grandparents to each pay one-third of the GAL fees, amounting to $12,559.

**{¶35}** It is from this judgment that father and the grandparents appeal. The father raises three assignments of error for our review (the first three) and the grandparents raise one (the fourth).

## Custody

**{¶36}** In his first assignment of error, father maintains that the trial court abused its discretion by naming mother the children's residential parent. Father submits that he should have been named residential parent because he is the parent who is more likely to facilitate parenting time with the other parent. He claims the record establishes that mother manipulated the court system and made up allegations against him "to achieve her own goal of being established residential parent."

**{¶37}** Generally, the trial court's discretion with respect to child custody issues should be accorded the utmost respect, especially in view of the nature of the proceeding and the impact the court's determination will have on the lives of the participants. *See Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). Absent an abuse of discretion, a reviewing court should affirm a trial court's judgment. Thus, a reviewing court will not overturn a trial court's custody or placement judgment unless the trial court failed to engage in a "sound reasoning process." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶38}** There was no prior custody decree in this case. Mother was the custodial and residential parent conferred on her by statute. R.C. 3109.042. ("An unmarried

female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian.") When a court is making an initial custody determination, the decision is to be made "in a manner consistent with the best interest of the [child]." R.C. 3109.04(A)(1).

{¶39} When determining the best interest of the children, the court is required to consider "all relevant factors," which include, but are not limited to: (1) the wishes of the child's parents regarding the child's care; (2) if the court has interviewed the child in chambers, the wishes and concerns of the child, as expressed to the court; (3) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (4) the child's adjustment to the child's home, school, and community; (5) the mental and physical health of all persons involved in the situation; (6) the parent most likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights; (7) whether either parent has failed to make all child support payments; (8) whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child; and (9) whether the residential parent or one of the parents subject to a shared parenting decree

has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court. R.C. 3109.04(F)(1).

{¶40} This case lasted for over three years. After being involved in the case since June 2010, the GAL recommended that mother be named the residential parent and legal custodian. The trial court heard three days of testimony and conducted in camera interviews with the children. Dr. Koricke, who testified that she did not really think that father's visits needed to be supervised any longer, still recommended that even if father received unsupervised visits, that the children and father should stay involved in family counseling in case any issues arose. Dr. Koricke further stated that although she did not conduct a "custody evaluation," she believed the children were doing "pretty well" in their mother's care. Indeed, father had just started receiving unsupervised visits in the months before the final hearing in the case.

{¶41} We further note that the GAL testified that in her opinion, mother did not alienate father. The GAL stated that mother had followed every court order regarding visitation throughout the case.

{¶42} Accordingly, after reviewing the entire record in this case, we find no abuse of discretion on the part of the trial court in naming mother the residential parent and legal custodian of the children.

{¶43} The first assignment of error is overruled.

Parenting Time

{¶44} In his second assignment of error, father argues that the trial court abused its discretion by not awarding him parenting time according to the standard visitation schedule. He further maintains that even if this court finds that the trial court did not err when it only gave him one weekend of parenting time per month with his children, it still abused its discretion by not awarding him extra holiday or summer parenting time.

{¶45} In determining whether to grant parenting time to a parent, the court shall consider a number of factors, including the following factors that are relevant here: (1) the prior interaction and interrelationships of the child with the child's parents; (2) the geographical location of the residence of each parent and the distance between those residences; (3) the child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule; (4) the age of the child; (5) the children's adjustment to home, school, and community; (6) if the court has interviewed the child in chambers, the wishes and concerns of the child, as expressed to the court; (7) the health and safety of the child; (8) the amount of time that will be available for the child to spend with siblings; (9) the mental and physical health of all parties; (10) each parent's willingness to facilitate the other parent's parenting time rights; (11) whether the residential parent has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; and (12) any other factor in the best interest of the child. R.C. 3109.051(D).

**{¶46}** We are mindful that in fashioning a schedule for the residential parent's parenting time, trial courts afford broad discretion. Accordingly, while a juvenile court's visitation orders must be reasonable and consistent with the best interest of the child, an appellate court must review a juvenile court's decision concerning visitation with great deference. *Otten v. Tuttle*, 12th Dist. Clermont No. CA2008-05-053, 2009-Ohio-3158, ¶ 13. After reviewing the entire record in this case, we cannot say that it supports father's claim that the trial court abused its discretion.

**{¶47}** Despite Dr. Koricke's testimony that she did not think that father "really needed to be supervised," there is evidence in the record that as of the June 2012 hearing, the children still did not want to be alone with father. According to the GAL's report, both children had been diagnosed with mental disorders and were still involved in individual counseling because they witnessed father physically abusing mother. Father contends that all charges against him were dismissed, but that has nothing to do with what the children actually experienced.

**{¶48}** Finally, it is important to note that the trial court conducted in camera interviews with the children after the final hearing on October 2, 2012. Another factor the trial court was required to consider was the children's wishes regarding parenting time.

**{¶49}** Thus, it is our view that the trial court considered all of the factors and fashioned a parenting-time order with father and a visitation schedule with the paternal grandparents that was in the best interest of the children.

**{¶50}** The second assignment of error is overruled.

## Other Orders

**{¶51}** Father argues in his third assignment of error that the trial court abused its discretion by ordering that father could not videotape the children or take away their cell phones.   After review, we find no abuse of discretion.

**{¶52}** The evidence in the record establishes that father had recorded the children over the years in an attempt to get them to say negative things about their mother.   As the Franklin County Children Services hearing officer stated about one of the videos: "[t]he making of this recording suggests a disdain for the mother that exceeds common sense and compassion for the children."   Further, the children also told the GAL that when father videotapes them, they feel uncomfortable.

**{¶53}** Regarding the cell phones, the GAL recommended that the children have access to their cell phones at all times and should be able to call their mother any time they wanted to.

**{¶54}** Accordingly, we find no abuse of discretion on the part of the trial court. The third assignment of error is overruled.

## GAL Fees

**{¶55}** The paternal grandparents maintain that the trial court abused its discretion in ordering that they pay one-third of the GAL fees.

**{¶56}** The juvenile court is authorized to assess the costs of the GAL and other litigation expenses against a party by Juv.R. 4(G) ("[t]he court may fix compensation for

the services of appointed counsel and guardians ad litem, tax the same as part of the costs"). An appellate court reviews a juvenile court's award of GAL fees and other litigation expenses under an abuse of discretion standard. (Citation omitted.) *Holeski v. Holeski*, 11th Dist. Portage No. 2009-P-0007, 2009-Ohio-6036, ¶ 28.

**{¶57}** The grandparents joined in the case early on when they filed their motion for visitation — in April 2010. They were fully involved as parties throughout the proceedings. During the case, they moved to modify the temporary visitation schedule, along with father. They met with the GAL and spoke with her on the telephone, as well as through email, throughout the case. Accordingly, we find no abuse of discretion on the part of the trial court.

**{¶58}** The fourth assignment of error is overruled.

**{¶59}** Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


MARY J. BOYLE, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MARY EILEEN KILBANE, J., CONCUR