[Cite as *In re D.D.J.*, 2024-Ohio-2581.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE  D.D.J.                                             :

                                                         No. 113283

A Minor Child                                            :

[Appeal by D.W.S., Mother]                               :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  July 3, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. FA19105285

---

*Appearances:*

D.W.S., *pro se.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Appellant mother and appellee father are the parents of D.D.J. ("the child"), who was born in December 2018. This highly contested custody case commenced when, several months after the child's birth, father filed an application for the determination of the child's custody, alleging that mother was unfit to care for the child.  During the pendency of the case, mother made repeated allegations that father sexually and physically abused the child.  Mother also engaged in

significant motion practice before the matter proceeded to a trial in July 2023. After trial, the court granted legal custody to father and provided mother supervised visitations. Having reviewed the record and applicable law, we affirm the trial court's judgment.

**Facts and Procedural Background**

{¶ 2} Since father's application for custody determination in April 2019, mother made repeated allegations of sexual abuse of the child by father and periodically withdrew the child from visitations with father. Mother filed her first police report in July 2021. As a result of the allegations, on March 31, 2022, father filed a motion for emergency temporary custody on the grounds that mother made unfounded accusations of sexual abuse against father.

{¶ 3} On May 16, 2022, a magistrate conducted a hearing on the matter. Mother, father, their respective counsel, as well as the child's guardian ad litem ("GAL"), were present at the hearing. On May 18, 2022, the magistrate issued a pretrial order, finding that mother continued to falsely accuse father of sexually abusing the child and refused to abide by the court-ordered parenting time for father.

{¶ 4} The magistrate noted mother's allegations had been investigated by the Cuyahoga County Division of Children and Family Services ("CCDCFS"), the police department, and medical professionals. Mother's accusations caused the child to be interviewed on multiple occasions, including a forensic examination. Father had also submitted his DNA as part of the investigation. Mother, however, refused to

accept the finding that the child was not sexually abused by father and, in fact, made new allegations at the hearing. Mother ignored the court orders and made various excuses for limiting father's parenting time since the case was filed in 2019. The magistrate expressly found mother's testimony inconsistent and not credible.

{¶ 5} Pursuant to Juv.R. 13, the magistrate awarded emergency temporary custody of the child to father until further order of the court and granted mother supervised visitations. The magistrate also continued the matter for a further pretrial after the parents completed the court clinic's family evaluation.

{¶ 6} Mother filed a motion to set aside the magistrate's order. She claimed the magistrate ignored "evidence of the child being sexually, physically, and mentally abused by the father." She also asserted that "[c]hild received multiple head injuries while in father's care after allegations of child abuse." She claimed, "Cleveland police will be doing a reinvestigation on this case as new evidence has been presented." The trial court denied her motion.

{¶ 7} On May 26, 2022, the same day the trial court denied mother's motion, mother filed a motion for emergency custody, repeating the allegations of abuse of the child by father and adding new allegations of abuse. She also claimed that studies have shown the police and children and family services are "80%" wrong in child abuse cases.

{¶ 8} On June 17, 2022, mother filed another motion for emergency custody. She alleged that father was currently under investigation by the police for child abuse and neglect and attached to the motion the police report she filed on June 15,

2022. On June 24, 2022, she filed a motion for emergency hearing. A magistrate found the requested emergency hearing unwarranted. On July 27, 2022, mother filed another motion for emergency hearing to modify the temporary custody order, alleging the child was not getting proper medical attention and reiterating her claim that there was an ongoing police investigation regarding the abuse of the child by father.

{¶ 9} On August 15, 2022, the magistrate held another hearing in this case. Mother reported the existence of an active investigation into her allegation of abuse by the police. The child's GAL related his involvement in multiple investigations by the police department and the CCDCFS and expressed his concern that the child had been subjected to various examinations because of mother's accusations. The GAL also reported that father had shared with him the child's medical and IEP information and that the child's speech has improved greatly since his placement with father. The GAL recommended no change regarding mother's supervised visitations and believed the matter should be set for trial. On September 2, 2022, the magistrate issued another pretrial order, denying the pending motions filed by mother and ordered a trial of father's application to determine custody.

{¶ 10} On September 9, 2022, mother filed an affidavit with the Supreme Court of Ohio seeking to disqualify the presiding trial judge in this case on the ground that the judge improperly adopted the magistrate's May 18, 2022 order. The Supreme Court of Ohio denied the affidavit of disqualification, explaining that an adverse ruling, without more, is not evidence that a judge is biased.

{¶ 11} On September 12, 2022, mother filed a motion to set aside the magistrate's September 2, 2022 order, alleging that the two magistrates who have been involved in this case, as well as the GAL, had all committed unethical acts in ignoring her allegations of abuse. The trial court denied the motion.

{¶ 12} On the scheduled trial date, November 7, 2022, counsel for mother, who was newly retained, requested a continuance, which the trial court granted. Mother, however, discharged counsel eight days later. Mother retained new counsel, who was discharged by mother four months later. Thereafter, on April 20, 2023, mother filed an ex parte motion to terminate temporary custody order and a motion to remove the GAL. She claimed that the GAL's report was inaccurate and biased and that the GAL minimized the injury on the child's head and bruises on his body and failed otherwise to investigate father's abuse of the child. The GAL objected to mother's request for his removal. He reported that the child's alleged injuries had been observed by three different entities and characterized mother's allegations of injuries as gross exaggerations. Mother responded to the GAL's objection, reiterating her belief that the GAL ignored the evidence she presented and exhibited bias toward father. The trial court denied the motion for the GAL's removal.

{¶ 13} The custody matter proceeded to trial on July 26, 2023, and August 21, 2023. Father testified on his own behalf and also presented testimony from the GAL and a nurse practitioner who has been providing care for the child. Mother, proceeding pro se, did not present testimony but vigorously cross-examined father's

witnesses.  At the conclusion of the trial, the trial court announced its decision granting legal custody to father and provided mother with supervised visitations. The transcript reflects an 11-page analysis by the trial court for its custody determination.  The court journalized its decision on September 18, 2023.  Mother now appeals.  Father did not file a brief in this appeal.

**Appeal**

{¶ 14} Mother presents the following two assignments of error for our review:

I.    The trial court abused its discretion by awarding temporary emergency custody to the father of D.D.J. because the evidence did not support the implied finding that the temporary custody award would not be detrimental to the child.

II.   On September 18, 2023, the trial court abused its discretion by awarding sole legal custody to the father and legal custodian and residential parent to the father of D.D.J. and the mother supervised visitation based on false testimonies by the father, Physician Assistant, and GAL.  The trial court also ignored all the evidence the mother presented as pro se [litigant] and only allowed evidence from the father and his attorney to be accepted.

{¶ 15} Regarding the first assignment of error, the trial court awarded temporary custody to father on May 18, 2022, after a hearing held on May 16, 2022, finding that mother's repeated allegations had caused the child to be subjected to unwarranted interviews and examinations on multiple occasions.  Mother argues that the evidence "does not support the implied finding that the temporary custody award would not be detrimental to the child."  Mother, however, fails to submit a transcript of the May 16 2022 hearing to demonstrate her claim.  In the absence of

a transcript allowing an appellate review of an assignment of error, we are unable to address the claimed error. *In re D.H. (M.H.)*, 2012-Ohio-2272, ¶ 16 (10th Dist.); *In re Clowtis*, 2006-Ohio-6868, ¶ 34 (11th Dist.). We therefore summarily overrule the first assignment of error.

## A. Factors for Custody Determination and Standard of Review

{¶ 16} Under the second assignment, mother argues that the trial court abused its discretion in granting legal custody to father. R.C. 2151.23(A)(2) vests jurisdiction for custody disputes in the juvenile court for "any child not a ward of another court of the state." When a juvenile court makes a custody determination under R.C. 2151.23, it must do so in accordance with R.C. 3109.04. *In re Poling*, 64 Ohio St.3d 211, 216 (1992), paragraph two of the syllabus.

{¶ 17} In accordance with R.C. 2151.23(F)(1), the best-interest standard set forth in R.C. 3109.04 applies in making custody determinations. *In re S.A.*, 2019-Ohio-4161, ¶ 24 (8th Dist.); *see also In re Bonfield*, 2002-Ohio-6660, ¶ 49-50 (When exercising its authority under R.C. 2151.23(A)(2), the trial court "shall exercise its discretion in giving due consideration to all known factors in determining what is in the best interest of the children.").

{¶ 18} What a trial court must consider in determining a child's best interest include factors such as the parents' wishes; the child's wishes, if the court has interviewed the child; the child's interaction with parents, siblings, and others who may significantly affect the child's best interests; adjustment of the child to home, school, and community; and the mental and physical health of all persons involved.

R.C. 3109.04(F)(1)(a)-(j). Moreover, "[a]lthough a trial court is required to consider these R.C. 3109.04(F) factors in determining what is in a child's best interest, it retains broad discretion in making a best-interest determination." *In re E.O.T.*, 2019-Ohio-352, ¶ 39 (8th Dist.). Additionally, in a best-interest analysis, the trial court is not limited to those set forth under R.C. 3109.04(F)(1). *S.A.* at ¶ 24, citing *Nicely v. Weaver*, 2013-Ohio-1621, ¶ 29 (5th Dist.).

{¶ 19} We review a trial court's decision in child custody matters for abuse of discretion. *In re E.O.T.* at ¶ 39, citing *In re C.M.*, 2013-Ohio-5427, ¶ 37 (8th Dist.) ("[T]he trial court's discretion with respect to child custody issues should be accorded the utmost respect, especially in view of the nature of the proceeding and the impact the court's determination will have on the lives of the participants.").

## B. Analysis

{¶ 20} At trial, father presented testimony to show that mother made continual accusations of sexual and physical abuse of the child against him and he had been cooperating with the investigations. The accusations had been determined by the police department and the CCDCFS to be unsubstantiated. The child's medical care provider and the GAL had also investigated the allegations and found them to be baseless. Mother, however, refused to accept the findings and continued to make allegations against father and to subject the child to examinations for signs of abuse. There are six sexual abuse investigations by the CCDCFS alone. Mother was disruptive and hostile at the child's medical appointments and was escorted from the room by security on two such occasions because of her insistence on

additional examinations for signs of abuse. One of her visitations with the child was cancelled because she violated the rules of the visitation site prohibiting photographing and recording.

{¶ 21} In addition to the testimony regarding the abuse allegations, father testified that the child was involved in activities such as soccer and swimming; he was wearing appropriate eyeglasses to address his vision issues; and he attended an IEP program and speech therapy to help with his speech.

{¶ 22} Marisa Adams, a nurse practitioner at Cleveland Clinic, has been providing medical care for the child. She saw the child on four occasions, including the child's three-year well visit on June 3, 2022, and his four-year well visit on July 23, 2023, both of which mother attended. Adams described these visits as chaotic because of mother's presence; she was eventually escorted out by security on both occasions. In the three-year well visit, mother requested a SANE examination on the child for sexual abuse and other tests for physical abuse; in the four-year well visit, mother asked the child if father was touching him inappropriately. Adams testified that she did not see any signs of abuse on the four occasions she saw the child. Adams found the child to be "anxious and upset" when mother was present and felt the visits would proceed better without mother's presence. Adams also testified father was in compliance with all of the child's health requirements.

{¶ 23} John Stryker, the child's GAL, had submitted three reports in this case. He testified that father met the basic needs of the child and the child was thriving under father's care. The child also had a relationship with mother.

However, he estimated the child had been subjected to as many as ten investigations based on mother's allegations, which had all been found to be unsubstantiated. Mother's allegations included sexual abuse, poisoning, neglect, and head injury. He had personally interviewed the child several times and saw no signs of abuse. When shown photographs taken by mother of the child with marks on his head and body, the GAL described them as insignificant scratches.

{¶ 24} Although the GAL found the child to have a good relationship with mother and enjoyed spending time with her in the visitations, he believed that various institutions had been "weaponized" in her "campaign" against father and he was concerned that mother would include the child in her "campaign." Based on his observations of mother, father, and the child, and the child's education and medical needs and his progress, the GAL recommended that father be granted legal custody. He also recommended mother be granted supervised visitations.

{¶ 25} When announcing its decision from the bench, the trial court stated it considered the factors enumerated in R.C. 3109.04(F)(1)(a) through (j). The court found that father is meeting the child's medical, denial, vision, and speech needs appropriately and that the child is doing well in father's care. While finding that the child has a good relationship with mother and she could provide care for the child, the court found mother's behaviors as observed by the nurse practitioner during the child's well visit highly concerning. The court also noted the following regarding the GAL's report:

The Guardian ad Litem in the report indicates that for two years the GAL has been involved with mother and father, that there have been allegations of sexual abuse, poisoning, neglect, head injury, and that none of these allegations have been substantiated by any agency or by the GAL and his concern is regardless, mother continues to [allege] that neglect or abuse is going on and that his concern is if mother were to get custody or unsupervised visitation, that mother would continue enlisting the child into her campaign against father regarding allegations of abuse of the minor child and the Court's concern is that the child will continue to be subjected to ongoing and unnecessary physical or medical examinations.

{¶ 26} After applying the R.C. 3109.04(F)(1) factors, the trial court concluded it is in the child's best interest to award legal custody to father and grant mother supervised visitations.

{¶ 27} The gist of mother's argument on appeal is that the trial court ignored evidence of abuse and granted legal custody to father based on false testimony provided by the witnesses at trial. Mother essentially asks this court to review the evidence in this case de novo.

{¶ 28} As widely recognized, custody issues are among the most difficult and agonizing decisions a trial judge must make, and therefore, a trial judge must be afforded wide latitude in their consideration of the evidence. *V.C. v. O.C.*, 2021-Ohio-1491, ¶ 54 (8th Dist.), citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). Accordingly, the trial court's decision must not be reversed absent an abuse of discretion. *Id.*, citing *In re E.O.T..* 2019-Ohio-352, ¶ 39 (8th Dist.), and *In re J.W.*, 2017-Ohio-8486, ¶ 19 (8th Dist.); s*ee also, e.g.*, *Short v. Rhodes*, 2021-Ohio-1845, ¶ 96 (6th Dist.); *Saylor v. Saylor*, 2020-Ohio-3647, ¶ 10 (1st Dist.).

{¶ 29} "'The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that a trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *In re E.S.*, 2018-Ohio-1902, ¶ 23 (4th Dist.), quoting *Davis* at 418; s*ee also Perrin v. Perrin*, 2021-Ohio-2581, ¶ 34 (8th Dist.). As the Supreme Court of Ohio explained, "Such deference is 'even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well.'" *Perrin* at ¶ 34, quoting *Davis* at 418.

{¶ 30} Our review of the transcript indicates father presented three witnesses on his behalf and, while mother did not present witnesses, she vigorously and extensively cross-examined father's witnesses. Considering the evidence presented at trial, the trial court explicitly applied the pertinent factors under R.C. 3109.04(F)(1); the transcript contains 11 pages of the trial court's analysis. Assessing the credibility of the witnesses, the trial court found mother's allegations of sexual and physical abuse unsubstantiated and that mother's persistent allegations despite the lack of proof are counter to the child's best interest. Having reviewed the record and testimony presented in this case, we decline mother's request to independently review the credibility of the witnesses and conclude that the trial court did not abuse its discretion in awarding legal custody to father. For all the forgoing reasons, we affirm the judgment of the trial court.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR